FILED

2021 May-10  PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| BARBARA SAULS, | ) | |
| | ) | Case No.: 5:18-cv-01248-MHH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RANKIN SNEED, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS THIRD AMENDED COMPLAINT AGAINST DEFENDANTS LORI AND DAVID MARROW

COME NOW Defendants Lori Marrow[1] and David Marrow (the "Marrow Defendants"), by and through undersigned counsel, and respectfully request that this Honorable Court dismiss the Plaintiff's claims against them in the above-styled action, as stated within Plaintiff's April 27, 2021 Third Amended Complaint (Doc. 36).  In support thereof, the Marrow Defendants state as follows:

### PROCEDURAL BACKGROUND

On April 27, 2021, Plaintiff filed her Third Amended Complaint and, in so doing, has again (slightly) modified her claims based on the same basic factual averments as previously alleged.  Specifically, Plaintiff alleges via the Third Amended Complaint as follows:

---

[1] This motion is filed on behalf of Lori Marrow, individually and as Trustee of the Living Trust of Davey Michael Sauls, dated July 6, 2016.

- 1 -

Factual Allegations.

- Plaintiff separated from Mr. Sauls in January of 2015 and moved from the marital residence in Huntsville, Alabama to Florida.[2]

- In October of 2015, Mr. Sauls filed for a divorce in the Circuit Court of Madison County, Alabama, and on November 16, 2015, the divorce court ordered both parties to preserve all assets, regardless of title, as they may be considered marital assets.[3]

- Due to criminal allegations alleged against Mr. Sauls, he lost his job at Lockheed Martin, through which he previously accumulated a significant retirement account.[4]

- Following the criminal charges, Mr. Sauls remained in the marital residence but became ill in May of 2016 (allegedly due to an increased alcohol intake) and was admitted to Crestwood Medical Center for treatment.[5]

- Sometime thereafter, Defendant Lori Marrow, who was Mr. Sauls' niece, travelled from Virginia to Huntsville to obtain a power of

---

[2] Third Amended Complaint, Doc. 36 at ¶ 8.

[3] Id.

[4] Id. at ¶ 9.

[5] Id. at ¶¶ 9-10.

attorney and, according to the Complaint, to "pursue [Mr. Sauls'] assets due to his condition."[6]

- On May 27, 2016, Mr. Sauls requested within his divorce proceedings a *pendente lite* modification to allow him access to his pension to obtain health insurance. Plaintiff objected to that request and preferred that Mr. Sauls obtain health insurance as a military veteran.[7]

- Mr. Sauls subsequently returned to the hospital and, on June 9, 2016, again requested access to his pension. On June 23, 2016, the circuit court held a hearing on Mr. Sauls' motions and discussions occurred between the parties, but no order was entered on the motions and no resolution was reached.[8]

- At some point prior to the June 23, 2016 hearing, while Mr. Sauls was in the hospital, Plaintiff had the locks to their marital residence changed.[9]

---

[6] Id. at ¶ 10.

[7] Id. at ¶ 11.

[8] Id. at ¶ 12. Within paragraph 13, Plaintiff erroneously alleges/implies that Defendant Lori Marrow was a party to the divorce proceedings.

[9] Id. at ¶ 14.

- Following the hearing on June 23, 2016, Defendants Lori and David Marrow went to the marital residence and removed marital assets from the home, including furniture, tools and vehicles. To gain access to the home, Lori Marrow presented Defendant Locktec with a power of attorney for Mr. Sauls and advised Locktec that she was moving him from the martial residence.[10]

- During the weekend of June 25-26, 2016, Plaintiff visited Mr. Sauls at the hospital. During these visits, "Davey Sauls represented to Plaintiff that he needed access to funds from his 401(k) for medical purposes and that if he was granted access to some of those funds to procure insurance to cover items not then covered, he promised [he] would not remove or change her as the beneficiary of his 401(k)."[11]

- Based on this assurance, Plaintiff agreed to the circuit court's dismissal of the divorce case on June 28, 2016.[12]

- Sometime around July 6, 2016, Defendant Lori Marrow retained counsel for Mr. Sauls to draft a new trust document.[13]

---

[10] Id. at ¶¶ 14-15.

[11] Id. at ¶ 16.

[12] Id. at ¶¶ 16-17.

[13] Id. at ¶ 19.

- On July 6, 2016, Mr. Sauls' new lawyer visited him at the hospital and witnessed Mr. Sauls sign the new trust document, despite Mr. Sauls being heavily sedated to the point of incompetency.[14]

- On July 8, 2016, Lori Marrow "accessed [Mr. Sauls'] 401(k) account and changed his beneficiary to the trust."[15]

- Mr. Sauls died on July 10, 2016. After Mr. Sauls' death, Plaintiff learned of Mr. Sauls' change of beneficiary, as well as other asset transfers during the pendency of the divorce and "the transfer and taking of other assets after his death on July 10, 2016."[16]

<u>Specific Claims for Relief.</u>

Based on these allegations, Plaintiff re-asserts her claim in Count I to set aside the Trust (*i.e.,* The Living Trust of Davey Michael Sauls, dated July 6, 2016) and Lori Marrow's power of attorney and further requests an emergency protective order, forbidding any further distributions from the Trust.

In Count II, Plaintiff asserts a promissory fraud claim, alleging that Davey Sauls promised her, prior to his death, that if she would dismiss the divorce action,

---

[14] Id.

[15] Id. at ¶ 20.

[16] Id. at ¶¶ 20, 21.

he would not change the beneficiary on his retirement plan and that he misrepresented to her that he needed her to dismiss the divorce, in order to obtain health insurance to cover his medical bills associated with his end-of-life treatment. Plaintiff further alleges that she relied on Mr. Sauls' promise to her detriment because, after the divorce action was dismissed, the Trust was immediately implemented by David and Lori, which diverted assets from the Sauls' Estate.

The bases of relief in Count III remain unclear, as that count combines Plaintiff's previous claims of fraudulent misrepresentation, fraudulent transfer, and fraudulent conveyance as a single claim for breach of fiduciary duty. Specifically, Plaintiff claims that Lori Marrow breached her "fiduciary duty"[17] by misrepresenting to Voya (*i.e.,* Voya Institutional Plan Services, LLC) that she was, in fact, Davy Sauls, and, in doing so, convinced Voya to change the beneficiary information on his retirement account. Additionally, Plaintiff claims that Lori Marrow: (a) acted in bad faith by misrepresenting to Davey Sauls' attorney that he needed money to pay for his health insurance; and (b) fraudulently represented to Locktec and the police that she needed access to the marital residence to facilitate Davey moving out of the house, when instead she used the opportunity to locate his retirement account information and change the beneficiary. Finally, Plaintiff claims in Count III that Davey Sauls and Lori Marrow fraudulently transferred money from

---

[17] Plaintiff does specify to whom Lori's fiduciary duty was owed, or how that duty arose.

accounts and personal property in violation of the Madison County Circuit Order (presumably, in the divorce case).

In Count IV, Plaintiff asserts claims for civil trespass and conversion, based on allegations that David and Lori Marrow: (a) entered and removed property from the former marital residence, prior to Davey Sauls' death but without Plaintiff's permission; (b) fraudulently or negligently represented themselves as Davey Sauls to Voya; and (c) unlawfully transferred and converted personal property and money from David Sauls' accounts (including the Voya retirement account) in violation of the Madison County Circuit Court order.

In Plaintiff's final claim (Count VI[18]), she asserts a negligence claim against Defendant Locktec for providing Lori and David Marrow a key to the marital residence. Additionally, Plaintiff attempts to add: (a) a catch-all claim against Lori and David Marrow for any negligent representation they may have made which led to unlawful actions by any other Defendant causing harm to Plaintiff; and (b) a duplicative claim for negligent misrepresentation against Lori Marrow, arising from her alleged communications with Voya.

### STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant Rule 12(b)(6), *Federal Rules of Civil Procedure*, a trial court must take "the factual allegations in the complaint

---

[18] Plaintiff's Third Amended Complaint does not contain a Count V.

as true and construe them in the light most favorable to the plaintiff."[19] However, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[20] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[21]

Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.[22] "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23] Bare allegations are not enough.[24] A plaintiff's obligation to provide the grounds for the entitlement of relief requires more than labels and conclusions, and the pleading must contain something more

---

[19] *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

[21] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

[22] *Id.* at 663.

[23] *Id.* (citing *Twombly*, 550 U.S. at 556).

[24] See generally *Brooks v. McDonald*, 2016 U.S. Dist. LEXIS 23701, p. 12 (M.D. Ala. Feb. 11, 2016).

than a statement of facts that merely creates a suspicion of a legally cognizable right of action on the assumption that all the allegations in the complaint are true.[25]

**ARGUMENT**

A.   <u>PLAINTIFF IS NOT THE REAL PARTY IN INTEREST FOR COUNT I.</u>

Within Count One of her Complaint, Plaintiff seeks an order setting aside the Trust on the basis that the Trust was created with fraudulent intent and that Mr. Sauls lacked sufficient capacity to properly authorize and execute the Trust.[26]   As a remedy, Plaintiff seeks an order requiring Defendant Lori Marrow, as trustee, to surrender any monies paid into the trust and to interplead them into this Court for re-distribution.[27]   Plaintiff fails, however, to assert either fact or law in support of her proposed remedy.

Under both Alabama and federal law, Plaintiff is not a real party in interest with authority to bring a judicial action to terminate or modify the trust.  Specifically, Rule 17(a)(1) of the *Federal Rules of Civil Procedure* states, in pertinent part:

> An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought: (A) an executor; (B) an administrator; (C) a guardian; (D) a bailee; (E) a trustee of an express

---

[25] See *Twombly,* 550 U.S. at 555.

[26] Doc. 36, ¶¶ 23-24.

[27] Id. at ¶ 26.

trust; (F) a party with whom or in whose name a contract has been made
for another's benefit; and (G) a party authorized by statute.[28]

This enumerated list is mirrored by Rule 17(a) of the *Alabama Rules of Civil
Procedure.*[29]   The purpose of this list is to provide guidance where needed and to
emphasize that the real party in interest may not be the person beneficially interested
in a potential recovery.[30]   Similarly, Alabama's Uniform Trust Code identifies
trustees and trust beneficiaries as the parties vested with the expressed authority to
file suit to terminate, modify, or otherwise challenge a trust.[31]

In this case, Plaintiff is neither the trustee nor a beneficiary of the trust.
Instead, Plaintiff "claims herself as a creditor and/or beneficiary of the Estate and
demands the trust be set aside to collect her claim from the Estate."[32] Even so, her
purported status as a creditor or beneficiary of Mr. Sauls' estate merely confirms
that she may have an interest in a potential recovery—which does not equate to
acting as the Estate's executor.  As such, Plaintiff has failed to plead a valid basis
for her to be deemed a real party in interest under Rule 17.

---

[28] FED. R. CIV. P. 17(a)(1).

[29] See ALA. R. CIV. P. 17(a).

[30] See *Steger v. GE,* 318 F.3d 1066, 1080 (11th Cir. 2003); see also *Pollard v. H.C. P'ship*, 2020
WL 1226488, 2020 Ala. LEXIS 46, *25 (Mar. 13, 2020).

[31] See FED. R. CIV. P. 17(a)(1); ALA. R. CIV. P. 17(a); ALA. CODE §19-3B-201(a) (1975) ("The
court may intervene in the administration of a trust to the extent its jurisdiction is invoked by an
interested person or as provided by law"); ALA. CODE §19-3B-410(b) (1975).

[32] Doc. 36 at ¶ 26.

B.    THE MARROW DEFENDANTS ARE NOT PROPER PARTIES TO COUNT II.

In support of her promissory-fraud claims within Count II, Plaintiff avers: (a) that *Mr. Sauls* promised that he would not change Plaintiff as a beneficiary to his 401(k) account if she would agree to dismiss the divorce case; (b) that *Mr. Sauls* intended to defraud her at the time he allegedly convinced her to dismiss the divorce case; and (c) that she detrimentally relied on his alleged representation.[33]

With regard to the Marrow Defendants, Plaintiff asserts the following allegations: (a) "[a]fter Plaintiff dismissed the divorce action based on the fraudulent misrepresentation of Davey Sauls, an irrevocable, living trust was immediately implemented by Defendnat Lori and David which diverted Davey Saul's [sic] assets to the trust from this estate causing damage to the Plaintiff as a beneficiary of the Estate"; and (b) "Plaintiff avers the Plaintiff [sic] fraudulently misrepresented his intentions to the Plaintiff and conspired with Defendant Lori to deprive Plaintiff of assets to be obtained through his estate."[34]   There is no further development of the claim within Count II[35], but Plaintiff nevertheless claims that she is entitled to

---

[33] Doc. 36 at ¶ 28-29.

[34] *See* id at ¶ 29.

[35] See *Blount v. Valley Nat'l Bank*, 297 So. 3d 1155, 1160 (Ala. 2019) ("a key component of a civil-conspiracy claims is the requirement of an underlying tort").

damages "from the Estate of Davey Sauls and Defendants Lori and David due to the damages caused by the Defendants' actions."[36]

Notably, with respect to promissory fraud, Plaintiff failed to allege at least some facts to show: (i) that a false misrepresentation was made by the Marrow Defendants, (ii) that their false representation made was of a material existing fact; (iii) that their false representation was reasonably relied upon by the Plaintiff; (iv) that the Plaintiff suffered damages as a proximate consequence of their alleged misrepresentation; (v) that at the time of the alleged misrepresentation, the Marrow Defendants had the intention not to perform the act promised, and (vi) proof that the Marrow Defendants had the intent to deceive.[37]  Accordingly, Plaintiff's attempt to state a promissory fraud claim against the Marrow Defendants fails as a matter of law.[38]

C.    PLAINTIFF'S BREACH OF FIDUCIARY CLAIM FAILS FOR MULTIPLE REASONS.

Plaintiff couches her previous mix of fraud claims as a claim for breach of fiduciary duty in Count III of the Third Amended Complaint; however, the Marrow

---

[36] Doc. 36 at ¶ 30.  This notwithstanding, Plaintiff's prayer for relief is limited to the Estate.

[37] *Saia Food Distribs. & Club, Inc. v. SecurityLink from Ameritech, Inc.*, 902 So. 2d 46, 48 (Ala. 2004).

[38] In the event Plaintiff intended to assert an additional, unidentified claim against the Marrow Defendants within Count II, she failed to adequately do so.

Defendants owe no fiduciary duty to Plaintiff.[39] Specifically, there is no confidential relationship between Plaintiff and the Marrow Defendants, and the Third Amended Complaint fails to allege that such a relationship even exists.[40]

Even if couched in fraud, Plaintiff's assertions made within Count III do not comply with the heightened pleading standard of Fed. R. Civ. P. 9(b). Specifically, Plaintiff alleges within Count III the follows actions by the Marrow Defendants:

- Lori Marrow misrepresented herself to Voya as Mr. Sauls to change his retirement account beneficiary;

- Lori Marrow misrepresented to Davey Sauls' attorney that he intended to procure money for the purpose of obtaining health benefits;

- Lori Marrow misrepresented to Locktec and to the police that she was moving Davey Sauls from the marital residence to gain access to his financial records; and

- Lori Marrow, in conjunction with Davey Sauls, fraudulently transferred funds from Mr. Sauls' accounts in violation of an order from the Madison County Circuit Court. [41]

Under Rule 9(b) of the *Federal Rules of Civil Procedure*, a plaintiff alleging fraud must state with particularity the circumstances constituting fraud, including

---

[39] Doc. 36 at ¶¶ 32-35.

[40] *Swann v. Regions Bank*, 17 So. 3d 1180 (Ala. Civ. App. 2008) (recognizing that a fiduciary duty arises from a confidential relationship or, sometimes, from the particular circumstances of the case).

[41] Doc. 36 at ¶¶ 32-35.

allegations of the time or place where the fraud occurred.[42]  The purpose of Rule 9(b) is to alert defendants to the precise misconduct with which they are charged and to protect defendants against spurious charges of immoral and fraudulent behavior.[43]

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.[44]

Additionally, "[a] plaintiff alleging fraud must prove four elements: (1) a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of the reliance."[45]

Missing from the Plaintiff's allegations of fraud is any indication that the alleged misrepresentations were made to the Plaintiff or that the Plaintiff somehow relied upon those representations to her detriment. To the contrary, the Plaintiff asserts that Lori Marrow made false statements to certain third parties: *i.e.,* the

---

[42] Fed. R. Civ. P. 9(b); *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308 (11th Cir. 2002).

[43] *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d at 1310.

[44] *Id.*

[45] *George v. Associated Doctors Health & Life Ins. Co.*, 675 So.2d 860, 862 (Ala. 1996); See also ALA. CODE § 6-5-101 (2018).

police, Locktec, and Mr. Sauls' divorce attorney, which she claims resulted in various responses by those particular parties.  There is no recognizable allegation, however, that the Plaintiff was involved in those responses or that she otherwise relied upon Lori Marrow's alleged representations. As such, Plaintiff has failed to plead an actionable claim for fraud -- assuming that was her intent within Count III.[46]

> D.     PLAINTIFF'S CLAIMS IN COUNT IV ARE INADEQUATELY PLEAD
>        AND ARE FURTHER NEGATED BY MR. SAULS'S DURABLE
>        POWER OF ATTORNEY.

Within Count IV, Plaintiff claims that Defendants Lori and David Marrow unlawfully entered the marital residence and removed marital assets, constituting civil trespass and conversion. These claims fail, however, to account for two simple facts which are supported by the Complaint's allegations: (1) that Mr. Sauls was co-owner/resident of the marital estate; and (2) that Lori Marrow held a power of attorney for Mr. Sauls.[47]   As co-owner of the marital residence, Mr. Sauls was entitled to enter his home, at will— even after his disgruntled wife locked him out while he was in the hospital.[48]

---

[46] See generally *Crum v. Johns Manville, Inc.*, 19 So. 3d 208, 218-219 (Ala. Civ. App. 2009); ALA. R. CIV. P. 9(b).

[47] Doc. 36 at ¶¶ 10, 14.

[48] Any contrary argument from the Plaintiff would be hypocritical, considering the substantial weight her Complaint gives to Mr. Sauls's alleged non-compliance with the divorce court's standing *pendente lite* order during the pendency of the divorce proceedings.

Plaintiff initially avers in support of these claims that Lori Marrow entered the marital residence as Mr. Sauls' attorney-in-fact, for the purpose of removing unidentified "items from the marital residence."[49] Pursuant to Lori Marrow's alleged authority as Mr. Sauls' attorney-in-fact[50], her entry into the marital residence could not have constituted a trespass under the circumstances alleged.

Plaintiff subsequently alleges that the Marrow Defendants "unlawfully entered the marital residence and removed marital assets" with the intention "to remove property of the Plaintiff."[51] A claim for civil trespass requires a showing that the Defendants unlawfully entered *and took the Plaintiff's property* without lawful authority to do so.[52]  That is not the case here, as the Plaintiff's allegations center around the Marrow Defendants' alleged removal *of Mr. Sauls' personal property* from the home.

Regarding the conversion component of Count IV, Plaintiff's claim similarly fails because she did not allege specific, converted property to which she held legal title.  To establish a claim for conversion, Plaintiff must show that there has been a

---

[49] Doc. 36 at ¶ 14.

[50] See ALA. CODE § 26-1-2 (1975).

[51] Doc. 36 at ¶ 39.

[52] See ALA. CODE § 6-5-262 (1975)

wrongful taking of specific property and an assumption of ownership or dominion over the separate and identifiable property of another.[53]  In addition, Plaintiff must have a right to immediate possession of such property and the taking must be in defiance of that right. In other words, Plaintiff must show legal title in herself to the property at the time of the conversion and the immediate right to possession.[54]  In contrast, Plaintiff's bare and conclusory allegations fail to allege these required elements.

Plaintiff's final allegations within Count IV pertain to the alleged conversion of Mr. Sauls' 401(k) funds. Specifically, Plaintiff alleges that the Marrow Defendants "converted Mr. Saul's [sic] retirement plan by fraudulently or negligently misrepresenting themselves as Davey Saul" to VOYA and changing his beneficiary designation "prior to Davey Saul's [sic] death."[55]  This claim fails because the 401(k) funds were undisputedly owned at the time of the alleged conversion by Mr. Sauls, not the Plaintiff. Accordingly, the Plaintiff's own allegations establish that she lacked the requisite ownership and possessory rights over the property at issue.

---

[53] *McGee v. McGee*, 91 So. 3d 659, 667 (Ala. 2012).

[54] See *id.*

[55] Doc. 36 at 40.

E.   <u>Plaintiff's Allegations Do Not State A Claim For Negligence Against The Marrow Defendants.</u>

In her final count (Count VI[56]), Plaintiff attempts to argue a negligence claim against the Marrow Defendants for any negligent representation they may have made which caused harm to Plaintiff, and a duplicative claim for negligent misrepresentation against Lori Marrow, arising from her alleged communications with Voya.   Again, Plaintiff has failed to allege even the bare elements of a negligence claim.[57]   Specifically, Plaintiff has failed to allege that the Marrow Defendants owed her a duty, that they breached that duty, causation and damages.[58] As discussed above in the Standard of Review, a mere recitation of elements is insufficient to defeat a motion to dismiss; however, Plaintiff has not even attempted to allege those elements in Count VI.   For this reason, Plaintiff's attempt to assert negligence claims against the Marrow Defendants also fails as a matter of law.

---

[56] Plaintiff's Third Amended Complaint does not contain a Count V.

[57] *Smith v. Atkinson*, 771 So. 2d 429 (Ala. 2000).

[58] *Id.* at 436.

## CONCLUSION

WHEREFORE, premises considered, Defendants Lori and David Morrow respectfully submit that Plaintiff has failed to plead claims upon which this Court may grant relief and, thus, request that this Honorable Court dismiss those claims as alleged against them within the Third Amended Complaint.

Respectfully submitted this the 10th day of May 2021.

/s/ Charles A. Ray, IV
Charles A. Ray, IV (ASB-9371A51C)
Counsel for Defendants Lori Marrow
and David Marrow

CHARLES RAY, PC
200 WEST SIDE SQUARE, STE. 50
HUNTSVILLE, AL 35801
CRAY@CHARLESRAYPC.COM
256-346-1900

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of May 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to parties participating in the CM/ECF system for this matter.

*/s/ Charles A. Ray, IV*
Charles A. Ray, IV